Ms. Dennis for the appellant, Ms. Trayor for the appellees. Good morning, and may it please the Court, my name is Kelsey Dennis, and I am here on behalf of Appellant Ms. Lin. I would like to reserve three minutes for rebuttal, please. Thank you. When the District Court initially granted summary judgment in part, and denied in part, it made two key rulings of law. First, that the police had probable cause to arrest Ms. Lin for simple assault. And second, that there was a genuine dispute of material fact as to whether probable cause existed for the arrest for assault on a police officer or APO. However, upon reconsideration, the District Court completely abrogated its second ruling, citing to Harris, a court held that it didn't matter whether there were disputes regarding the APO. Rather, because the court found that there was probable cause for the simple assault, Ms. Lin could no longer proceed on her claims of false arrest for the APO. That judgment upon reconsideration was an error of law for two reasons. First, probable cause for the simple assault had in fact dissipated in the period between the two arrests. And as a result, probable cause from the first arrest could not be imputed onto the second. There was plenty of evidence in the record that probable cause had in fact dissipated, but the court did not weigh this evidence in the light most favorable to the non-moving party. Plaintiff only needs to establish that there is a genuine dispute of material fact as to whether probable cause existed for any charge at the time of the second arrest for APO. Second, because probable cause dissipated between the two handcuffings, Harris was not dispositive and it was a mistake to consider it controlling for purposes of Rule 54B. The district court improperly used a non-dispositive decision to dispose of plaintiff's three remaining claims and its order on reconsideration. As such, the three remaining claims relating to Ms. Lin's February 15, 2016 false arrest for APO should survive summary judgment. While the Rule 54B standard of as justice requires may be flexible, justice does not require nor allow a court to violate the Rule 56 standard by weighing evidence in the light most favorable to the moving party. That is exactly what the court did in its order on reconsideration. For Harris to be controlling, there would need to be probable cause for the simple assault at the time of the second arrest. The district court itself defined probable cause as a reasonable conclusion drawn from the totality of the circumstances. Probable cause cannot be established where there are materially impeaching circumstances or when the information provided to the officers is not credible. The court did not consider this totality of the circumstances in the record here. In its order on reconsideration, at page 6, the court stated that plaintiff provided no support for the speculation that probable cause had dissipated. Respectfully, that is not correct. You talk about the first arrest for simple assault, but Officer Johnson said it wasn't an arrest. It was simply a Terry stop, that this person was the one that they thought was the aggressor based on a discussion outside with an alleged victim, and to get more information they were just handcuffing this person while collecting more information. So I was curious about why your argument seemed to assume that it was actually an arrest, because for a Terry stop, they wouldn't even need probable cause, they just need reasonable suspicion. So we don't know the probable cause the officer even thought, or a reasonable officer would have thought there was probable cause at any point to arrest her for simple assault. It is absolutely correct that at the summary judgment stage, the argument amongst the parties spoke to whether or not that first arrest for the simple assault was an arrest or merely a detention, as you speak of. However, both parties agreed that there were two events in question here. One for the simple assault, and one for the APO. So maybe two events, but for the argument that the probable cause for the first one supported the arrest at the later time, it just seems to confuse things to talk about that under the assumption that there was probable cause when it was described by the police officers themselves as just a Terry stop and the handcuffing was just simply part of effectuating an officer safety. Does that matter? Well, on the, in the judgment on summary judgment, the order on summary judgment, the court determined that it need not resolve this specific dispute that you're speaking to, because the court itself found on summary judgment that there was probable cause for that first event. And as such, on reconsideration held that that probable cause carried over and disposed of plaintiff's three remaining claims relating to her false arrest claims for the APO. However, what is crucial here today in the era of law that we draw your attention to is that the district court did not properly consider the totality of the circumstances as to whether that probable cause that the district court itself found on summary judgment dissipated in the period between the two handcuffings, which I was referring to as the two arrests. Is the court a jury question or a question of law? The, we believe that the district court improperly disposed of information that should have been left to the jury. The district court found that there was no dispute of material fact as to whether probable cause dissipated. However, the era of law that we draw your attention to today is that the court did not consider the totality of the circumstances and the light most favorable to the moving party as is required by the rule 56 standard. As I mentioned on page six of the reconsideration order, the court held that plaintiff provided no support for the speculation that probable cause dissipated, but the court did not consider the following four key pieces of evidence. First, the officers agreed that plaintiff should be cut loose and her handcuffs were removed. Ms. Lynn's handcuffs were off and she was wandering around her place of business for approximately 10 minutes. Second, Ms. Rodriguez was deemed the aggressor and no longer a credible source of information. Third, other than Ms. Rodriguez's statements, there's no independent evidence of what occurred on the bus. Ms. Rodriguez's scratches just as easily could have come from the only physical altercation for which there is actually objective video evidence, the one in which she was in fact the aggressor outside of the ticketing station. And finally, Ms. Rodriguez was illegally on the bus and therefore Ms. Lynn had a right to remove her. Ms. Rodriguez did not have a ticket and was subsequently charged with unlawful entry into a motor vehicle. In fact, during Officer Merzig's deposition, he even recognized that Ms. Lynn had a right to remove Ms. Rodriguez from the bus. In the court's order on reconsideration, it ignored this evidence that probable cause had dissipated between the two handcuffings and thus could not be imputed onto the second arrest for APO. This is improperly weighing evidence and making inferences in favor of the moving party, contrary to the mandate of Rule 56. Upon reconsideration, the court did do its own analysis of the video evidence to determine if probable cause had dissipated. Is it possible that, assuming Ms. Lynn was the victim of the first assault, that that would provide her a motive that would actually increase the probable cause that already exists when someone like Ms. Rodriguez has bruising and says, I was assaulted and I'm identifying my name, I'm identifying? The critical question here is whether or not there is any dispute of material fact, a genuine dispute of material fact, as to whether that probable cause dissipated. So what I would draw your attention to is that it is equally likely here that Ms. Rodriguez, who was the aggressor outside of the ticketing office, and there is objective evidence that she provided false information to police officers about the incident in question, also had a motive that would significantly decrease probable cause and even dissipate it. And again- I understand that to a degree, but let me rephrase. Assume I think that in a different situation, all else being kind of unknown, there's probable cause to arrest someone who is accused of assault when the accuser is not anonymous and when the accuser has physical signs of it. And now my question to you is, assume there's probable cause there, is there more probable cause or is there less cause? Can we add to that knowledge that there had been a previous encounter where the accused may have been a victim and therefore might have a motive for the second assault? So the incident in which Ms. Lynn was attacked outside of the ticketing office actually came second and therefore it would, in your hypothetical, she would have had to retroactively had- Oh, that's okay. So the, under your theory, Ms. Lynn was, everyone agrees that Ms. Lynn was the victim of second. Understood. I'm sorry. Yes. No, that's completely okay. I just wanted to clarify for you. And I see that my time is coming to a close, so yes, of course. If you could just explain to me what precisely your theory is of negligent supervision in this case. Sure, of course. So as you discussed, one of the arguments made in our brief is with regards to negligent supervision. And I will try to be quite brief because I realize that I'm over time. And so- It's okay, answer the question as you need to. Thank you very much. So in our brief, we discuss an error in granting summary judgment on plaintiff's negligent supervision and training claim because we believe that the court and argue that the that Sergeant Ritchie's investigation of the APO could be distinguished from the lack of investigation in Tulane, which resulted in the court's finding of negligent supervision. However, in Tulane, the court held that defendant was liable for negligent supervision, not because there was no investigation, but rather because the investigation was not sufficient to identify critical information. So here, as in Tulane, there was negligent supervision based on the facts of the case. Sergeant Ritchie was aware that Ms. Lynn was falsely arrested when he arrived on the scene, nonetheless went on to authorize another false arrest for APO after watching inconclusive video evidence of the incident. As the district court found in its opinion on summary judgment- Wait, Sergeant Ritchie didn't watch video evidence of her- I know they were watching the video evidence of the fight out on the- or the assault out on the street or the sidewalk by the bus. Did he watch video evidence of the arrest itself? I can- Or the handcuffing, I should say, itself. When he initially requested that Ms. Lynn be arrested for the APO, that is before he looked at any video evidence as to whether the APO actually occurred or whether he believed that there was probable cause. I believe that he subsequently looked at the video evidence from within the actual office, the bus station, after making the suggestion that she should be arrested for the APO. As the district court- I'm sorry. Does the record say they looked at the evidence, the video of the arrest itself, before she was removed and taken to the police station? I do not have a specific record site for that question at this time. I'm happy to gather one and bring it up- But that's your understanding of what happened? That is my understanding of what happened. But as the district court found in its summary judgment decision, there was a genuine issue of material fact regarding whether probable cause existed for that APO because of the extreme lack of clarity in that surveillance video. But to get to Judge Rao's question, is that necessarily the same as whether there was negligent supervision because you can see the sergeant talking to the police officers about the handcuffing process and, you know, there's sort of contradictory words coming out of people's mouths, even if ultimately, assume there were not probable cause for arresting for assaulting a police officer, that doesn't necessarily mean there was negligent supervision in making a call on the scene based on sort of contradictory information. I would draw your attention to two pieces of evidence that underscore the negligent supervision that occurred here. First is that the suggestion for the arrest for an APO was made before any of this sort of objective analysis of the video evidence was done. And second, the conversations that were had with the police officers led to significant uncertainty as to whether the officers subjectively themselves even believed that they had been quote, APO'd. And so there was a lot of discussion around that with the officers. And while Sergeant Ritchie did that initial conversation with them, it remained highly unclear as to whether APO was appropriate based on even those subjective opinions. I ask about, give you a chance to respond to the government's argument in its brief that two issues were not served at the district. Or at least two halves, two issues were not. One is they say on count seven, negligent infliction of emotional distress, that the theory that there was infliction of emotional distress through excessive force was not preserved below. And then let me say the second to respond. And then they say on the DCHRA claim that the disparate impact on intentional discrimination was not preserved below. They say it was not mentioned in the complaints and only briefly mentioned in opposition to a summary judgment. If you could respond to that, I'd be great. Yes, of course. And thank you for giving me that opportunity. So I will speak first to the negligent infliction of emotional distress as you spoke. So in Ms. Lynn's opposition to defendant's motion for summary judgment, she argues that officers failed to follow MPD's procedures for identifying limited English proficiency persons, which led to an unjustified use of force that placed Ms. Lynn directly into danger. That's on page 44. So is that that's that's more than a theory that because of the language access issue, she should not have been handcuffed at all, arrested at all, that you're saying that that goes beyond and says even if it was OK to arrest her or handcuff that there was excessive force. Why is that? Why do you read that into that? I'm not opposed to it. It doesn't have a magic word excessive force. So tell me why it accomplishes the same. So here we argue that in plaintiff's opposition motion, she provided a detailed account of an instance where, for example, Defendant Johnson yelled at her to turn around, grabbed her arm, described how the officer's unreasonable force was used to push Ms. Lynn onto the ground when conducting the wrongful arrest. And as a result, she experienced extreme emotional consequences and physical. Is it enough to for preservation purposes to mention it in the opposition to summary judgment motion, not in the complaint? We believe that we fully preserve this argument on appeal and as well here in the opposition to motion for summary judgment. However, even if the panel does not find a reversible error of law in the original summary judgment order, at bottom, we ask that the September 30, 2020 memorandum order, which impermissibly dismissed plaintiff's three remaining claims relating to false arrest, be vacated. But it will also speak to your second question, which was with regards to the Title six DCHRA unintentional discrimination claim. Is that correct? Yes. OK, so as well, I will point your attention to I believe it's the same page page. And forty four on our opposition where oh, excuse me. Yes. Page forty four on our plaintiff's opposition to your motion for summary judgment, where we state that even if the court does not find intentional discrimination that violates Title six, DCHRA claim is not automatically defeated because DCHRA goes beyond to protect unintentional discrimination as well. Thank you very much. I wasn't saying thank you. You're done. I was saying thank you for answering my questions and tell you if you're done. All right. Thank you very much. We'll give you some time for rebuttal. Thank you very much. And do we know where counsel for the government is? Oh, you're on the video. Sorry, I forgot. Is there an MP chair over there? I apologize. Good morning. I'm sorry, I apologize, Mr. No worries. And the court is ready. Good morning. Thank you. May it please the court. Tylen Trayer for the appellees. There is an easy path to affirming the district court here, and that is to decide whether probable cause existed to arrest plaintiff for simple assault, in which case the existence of probable cause for that offense necessarily precludes plaintiff's false arrest claim based on APO. And it's abundantly clear from the record that probable cause existed based on the facts known to the officers at the time that they apprehended Miss Lynn. And that probable cause persisted, notwithstanding the video footage that showed a different altercation than what Miss Rodriguez reported. And I know my friend on the other side spent much time emphasizing whether or not the district court properly took into consideration the totality of the circumstances . But it's very important to note that nothing, no facts came to light during the course of the investigation that would have called into question whether or not Miss Lynn actually assaulted Miss Rodriguez on the bus. There was subsequent video footage of a different. What fact that the officers did not believe that the first handcuffing was, in fact, an arrest. Does that matter? For your argument, I don't think it matters to your honor. And probable cause existed independently for both offenses. And so if the court were determined or to determine that one arrest occurred later in time, there's I mean, there's the existence of probable cause independently on the APO charge. As much as we argued initially that there was not even an arrest. We also argued below that, of course, probable cause existed to substantiate that arrest. And so it was not a false arrest. But I think for the court's purposes, again, the easiest way to undertake this analysis is to view the facts as viewed through the lens of the officers at the time that they encounter Miss Rodriguez. We have an eyewitness account, a victim who, in this case, is a bleeding injury on her face and positively identifies her assailant, the assailant's location. And in those circumstances, under the Pendergrass and many other cases, that is sufficient to establish probable cause to arrest plaintiff at the time. And I just wanted to point out again, not if it dissipates and you have the officers when they look at the video. Both of them are clearly concluding that, oh, huh, is what we get. She was the aggressor, referring to Rodriguez, she was the aggressor and they watched the incident on the bus itself. Watch it and watch it and see what happens, and then they turn around and they talk about not that there was another assault and even mention anything like they go, huh, should she be charged with illegal entry? You know exactly what is the sort of technical charge for getting on the bus without a ticket? Now, if there had just been a brawl on the bus, they'd be talking about that. But we know that they said, based on the information in front of them, that, huh, Rodriguez is the aggressor. And whatever happened on the bus made them only contemplate and think about charges for illegal entry. There's there's what in the record. And by the way, both of them just described a single incident, neither of them said that there were two. Fights. They both described single incidents, and it's just that by the time they finished looking at the videos, Miss Rodriguez credibility had been completely shot to the point where they said she's the. So what evidence do you have that there was another. I'd assault by Miss Lynn, what what what what evidence did a reasonable officer have that there was even a fight on on the bus itself. In which Miss Lynn was the aggressor. Yes, and several answers to your questions around our first of all, appoint the court to page 22 of plaintiff's brief where plaintiff acknowledges that the footage was not of the assault on the bus. So I think by plaintiff's own acknowledgment there, in addition to Miss Rodriguez's description, I think it's J. H. I'm sorry, it is knowledge meant. So I'm reading from plaintiff's brief at page 22, we're playing, but I ask what evidence is in the record that the police officers have, they didn't have for brief. The evidence is, and my apologies, the evidence in the record is would be the body cam camera, the body worn camera footage from officer Volo, the their conversation with Miss Rodriguez, or she describes an altercation on the bus. And I think that's acknowledged and substantiated by plaintiff in her brief. But I think another point is that that information gleaned from the video footage occurred after the fact. And the officers are still undertaking their investigation at that point. There are additional facts that come to light that need to be run down. But again, it's of a different altercation than what Miss Rodriguez described. And that those after the facts, those that information learned after the fact does not, again, call into question what the officers knew at the time that they initially apprehended plaintiff. And so that would be a close circuit video of what happened on the bus itself in the record, because we don't have that. No, no, but we have, again, the report from Miss Rodriguez of different altercation and the officers were looking at when they saw her get on the bus. I'm sorry, the travel agency they were looking at, it certainly looked like at least where she was entering onto the bus, they said there she is, want to see what she does and she got on. Whereas all we have is video of officers watching a grainy video, that's right. And so the video that they were viewing, I think actually it's it may be, I'm sorry, JA279 in the record, there's a video. I believe the camera is placed outside of the station. And so you can see the bus on the sidewalk outside of the station. So there's there's footage of what occurred on the sidewalk, but not inside the bus. But again, I think it's only fair to read plaintiff's brief is really not disputing that there were two altercations that occurred. I'd also point the court to Officer Vulo's deposition in the record. I think that's around JA541, where he describes that in making the arrest report and the footage and back through his notes and and consider the fact that there were these two different altercations reported. And and again, just to sort of take a step back, the probable cause inquiry is not a high bar. It's not the same thing as guilt beyond a reasonable doubt. The standard allows for facts and circumstances on both sides of the equation. But where there's a fair probability that here, a plaintiff assaulted Miss Rodriguez, where she's she's making that report. And again, she has a bleeding injury on her face. And there's nothing in the video footage to call into question whether or not that assault occurred on the bus. The probable cause did persist throughout the entire time. Does this require some evidence that this injury occurred on the bus? Some affirmative evidence? We have the eyewitness. The absence of evidence can't be sufficient. It has to be some affirmative evidence and there can't be materially impeaching information. That's right. And so my. Affirmative. At the time of the arrest. Not the post hoc report, not going back at the time of the arrest, not going back and viewing things later in the station, at the time of the arrest, the positive affirmative information of a second assault was what? The positive because it. I'm sorry, I may have missed it. Was it just Rodriguez explanation? Yes, and that is it's her it's. I'm sorry, the affirmative evidence in the record is her eyewitness victim account, her bleeding injury on her face and the bleeding injury is fully covered by the video of the assault that she initiated outside. Then you see Miss Lynn swinging back. So I'm asking not whether before they saw the videos, I'm asking before. They effectuated the rest as opposed to the Terry's. The affirmative evidence was you're sticking with the Miss Rodriguez. How to scratch. And told a story and that wasn't materially impeached. Yes, and that's sufficient under the Pendergrass case, and my only point with respect to what I think your honor termed the absence of evidence later on is that plaintiff has asserted that materially impeaching circumstances arose later in time by virtue of the video. And my point there was that we don't have video evidence, actually, that would call into question that account of the assaults on the bus. But you have video evidence that would support it. That that would I'm sorry, I think I missed your honor. Again, other than we have her. Right, well, I think for Miss Rodriguez complaint outside when the police first arrived, which was. Pretty thoroughly discredited. Is. You said there's additional evidence of the assault on the bus. What? No, and I'll just sort of take issue a little bit with the premise there on her question, I don't know that her credibility was totally she was totally discredited there. She may have initially misrepresented her the reasons for why she got into the altercation. But again, I think the the the question really is whether those materially impeaching circumstances presented to the officers at the time that they first apprehended Miss Lynn. And that's that's simply not the case. And he and so, again, I think the the court can easily affirm the district court by approaching this first from the probable cause for simple assault perspective, independent of that probable cause existed on the APO charge. I'm happy to answer any other questions the court might have. Otherwise, we will rest in our brief. All right, thank you, thank you. OK, Miss Dennis, we'll give you two minutes. You agree that there were two separate altercations. Would you concede that? Both parties agreed in their briefing at the summary judgment stage that there were two incidents, at least in question. However, we do not concede that there is any objective evidence beyond Miss Rodriguez's non-credible statements that the simple assault on the bus ever occurred. We only agree there was an incident as in an interaction of some sort on the bus. But we don't know that there was a physical interaction. Exactly. There is, as my friend on the other side recognized, there is evidence, video evidence of Miss Lynn and Miss Rodriguez both getting onto the bus, but no evidence from the only evidence the assault on the bus even occurred, as you mentioned, was the non-credible statements from Miss Rodriguez and her scratches. Any statements from Miss Rodriguez, however, lost all credibility after the CCTV footage was viewed. And although we recognize that the CCTV footage did deal with the altercation outside of the ticketing office rather than inside of the bus, the CCTV footage is about the incident in question and was no longer a credible source of information. And again, the district court impermissibly dismissed this impeaching value of the CCTV footage in order to determine whether probable cause dissipated before that second handcuffing. The court must consider the totality of the evidence between the two handcuffings, and it must do so in the light most favorable to the non-moving party. Yet on reconsideration, the court failed to consider any evidence offered by the plaintiff in the record that probable cause dissipated before the arrest for the APO. If the court had considered the evidence in the light most favorable to Miss Lynn, there would be a genuine dispute material fact as to whether probable cause existed for any charge at the time of the second arrest. As a result, Harris does not dispose of plaintiff's three remaining claims relating to Miss Lynn's February 15, 2016 false arrest for APO. Thank you so much for your time. Thank you very much for your argument. The case is submitted.
judges: Millett, Rao, Walker